**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED MARCH 29, 2005**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                   No. 124811

WAYNE L. YOUNG,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

In *People v McCoy*, 392 Mich 231; 220 NW2d 456 (1974), this Court invented a new rule regarding cautionary instructions on accomplice testimony. That rule provided that the trial court's failure to give a cautionary instruction upon a defense request requires reversal of a conviction. Moreover, reversal may be required even in the absence of a defense request if the issue of guilt is "closely drawn." We reject the *McCoy* rule because it has no basis in Michigan law. Indeed, it contravenes long-standing authorities according discretion to trial courts

in deciding whether to provide a cautionary instruction on accomplice testimony. Moreover, the *McCoy* rule is inconsistent with MCL 768.29, which provides that the failure to instruct on a point of law is not a ground for setting aside a verdict unless the instruction is requested by the accused, and MCR 2.516(C), which states that a party may assign as error the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict.

We further clarify that an unpreserved claim of failure to give a cautionary accomplice instruction may be reviewed only in the same manner as other unpreserved arguments on appeal. That is, appellate review is confined to the plain-error test set forth in *People v Grant*, 445 Mich 535; 520 NW2d 123 (1994), and *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999). We therefore affirm the judgment of the Court of Appeals, because it reached the correct result in affirming defendant's convictions and sentences.

I. UNDERLYING FACTS AND PROCEDURAL HISTORY

Defendant shot and killed two people in an execution-style slaying while robbing a drug house in Detroit. Among other evidence of guilt, the prosecution presented

2

testimony from two witnesses whom defendant now claims were his accomplices, Michael Martin and Eugene Lawrence.

Martin testified that defendant came to his house and asked him for a gun to rob someone. Martin had no gun. Defendant then spoke on the telephone to Martin's brother-in-law, Lawrence. Martin did not hear their conversation. Martin then drove defendant to Lawrence's house. After they arrived, defendant and Lawrence spoke in a back room away from Martin, who again could not hear their conversation.

Lawrence testified that during this conversation, defendant asked him for a gun because some men had threatened him. Defendant did not mention to Lawrence any plan to rob a drug house. Lawrence did furnish a gun to defendant. Martin and defendant then drove back to Martin's home. Martin went inside his home while defendant walked off in the direction of a nearby drug house.

Defendant later telephoned Martin, stating that he was planning to rob a drug house. Martin hung up. Later that day, defendant visited Martin's home and admitted that he had shot the two victims in the head. After defendant left, Martin contacted Lawrence. Martin and Lawrence then went to defendant's home. Defendant told them that he was angry because he had killed the victims for only six rocks of crack cocaine. Defendant called an unknown person and

3

directed him to tell Martin where to find the gun. Defendant eventually directed Martin and Lawrence to a field near Martin's home where Martin found the gun.

The police questioned Martin twice. During the second interview, he disclosed what had happened. The police then retrieved the murder weapon. Martin and Lawrence were never charged with a crime in connection with the murders.

In addition to the testimony of Martin and Lawrence, the prosecution presented other evidence of defendant's guilt. One witness testified that defendant had also asked him for a gun. Another witness, Ronald Mathis, had seen defendant in the drug house just before the murders occurred. At that time, defendant offered to sell Mathis a gun. Mathis then left the premises. Upon his return approximately fifteen minutes later, Mathis discovered the victims' bodies and noted that defendant was gone. Finally, a cigarette butt recovered at the murder scene contained deoxyribonucleic acid (DNA) material that matched defendant's DNA.

Defendant was charged with several offenses, including first-degree murder, MCL 750.316. The jury convicted defendant of two counts of second-degree murder, MCL 750.317; one count of assault with intent to commit armed robbery, MCL 750.89; one count of possession of a firearm

4

during the commission of a felony, MCL 750.227b; and one count of possession of a firearm by a person convicted of a felony, MCL 750.224f. Defendant was sentenced to concurrent terms of forty-five to seventy years' imprisonment for the second-degree murder convictions, forty to sixty years' imprisonment for the assault conviction, and two to five years' imprisonment for the felon in possession of a firearm conviction. Those sentences are to be served consecutively to the two-year term of imprisonment for the felony-firearm conviction.

The Court of Appeals affirmed defendant's convictions.[1] It rejected defendant's contention that the trial court had erred under *McCoy* in failing to sua sponte provide a cautionary instruction on accomplice testimony, concluding that: (1) this case did not present a closely drawn credibility contest, and (2) it was not clear that Martin and Lawrence were accomplices.

We granted defendant's application for leave to appeal. 470 Mich 869 (2004), mod 471 Mich 862 (2004).

## II. STANDARD OF REVIEW

Whether the *McCoy* rule has a basis in Michigan law and whether it is consistent with MCL 768.29 and MCR 2.516(C)

---

[1] Unpublished opinion per curiam, issued September 25, 2003 (Docket No. 240832).

are questions of law that we review de novo. *Jenkins v Patel*, 471 Mich 158, 162; 684 NW2d 346 (2004). Moreover, as discussed later in this opinion, the decision whether to give a cautionary accomplice instruction falls within the trial court's sound discretion. MCL 768.29; *People v Dumas*, 161 Mich 45, 48-49; 125 NW 766 (1910); *People v Wallin*, 55 Mich 497, 505; 22 NW 15 (1885). We therefore review that decision for an abuse of discretion. Finally, where, as here, the defendant failed to preserve his claim, our review is confined to the plain-error framework set forth in *Grant* and *Carines*.

### III. ANALYSIS

### A. Legal Background

In *McCoy*, this Court discussed dangers that inhere in accomplice testimony, including "'the effect of fear, threats, hostility, motives, or hope of leniency.'" *McCoy*, *supra* at 236, quoting 30 Am Jur 2d, Evidence, § 1148, p 323. The *McCoy* Court stated that in *People v Jenness*, 5 Mich 305, 330 (1858), this Court referred to a judge's duty to comment, where warranted, on the nature of accomplice testimony. The *McCoy* Court acknowledged, however, that subsequent case law reflected that the trial court had discretion in deciding whether to provide a cautionary accomplice instruction. See *Dumas*, *supra*.

6

The *McCoy* Court also acknowledged that federal courts have not articulated a definitive rule regarding cautionary instructions on accomplice testimony. Indeed, the United States Supreme Court refused to reverse a conviction on the basis of a failure to give such an instruction in *Caminetti v United States*, 242 US 470, 495; 37 S Ct 192; 61 L Ed 442 (1917). The *Caminetti* Court stated that "there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them." *Id*.

Despite these authorities, the *McCoy* Court invented a novel rule: "For cases tried after the publication of this opinion, it will be deemed reversible error . . . to fail upon request to give a cautionary instruction concerning accomplice testimony and, if the issue is closely drawn, it may be reversible error to fail to give such a cautionary instruction even in the absence of a request to charge." *McCoy*, *supra* at 240.

Justice Coleman dissented in *McCoy*. She cited MCL 768.29, which provides: "The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused." She also quoted the predecessor to MCR 2.516(C), GCR 1963, 516.2: "No party may assign as error the giving or the failure to give an

instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection."

Justice Coleman noted that the articulation in *Jenness* of a duty to comment on accomplice testimony predated both the statute and the court rule. Moreover, *Jenness* "was not a rigorously applied precedent." *McCoy*, *supra* at 248. For example, in *Dumas*, this Court stated:

> It is the long settled rule in this State that the credibility of an accomplice, like that of any other witness, is a question exclusively for the jury. And while there have been intimations, rather than rulings, to the effect that it is proper, or is not improper, especially in cases where an accomplice is the sole witness upon a material point, for the trial court to direct the attention of the jury to the circumstance and invite the exercise of caution upon the part of the jury, we know of no decision of this court in which it is held or intimated that the failure of the court to indulge in voluntary comment is ground for reversal. [*Dumas*, *supra* at 48.]

The *Dumas* Court had also quoted from *Wallin*, *supra*, where the trial court had refused a defense request to instruct the jury regarding circumstances that tended to discredit a witness. Chief Justice Cooley, writing for a unanimous Court in *Wallin*, rejected the defense argument:

> "We repeat that instructions respecting the credibility of witnesses, which involve no question of law, are not matter of right. The

8

judge is under no obligation to comment upon the facts; he may, if he chooses, confine himself strictly to laying down such rules of law as must guide the action of the jury, and leave the facts to them without a word of comment. In many cases this is no doubt the desirable course. And it is always within the discretion of the judge to adopt it." [*Id*. at 48-49, quoting *Wallin*, *supra* at 505.]

Justice Coleman's dissenting opinion in *McCoy* also noted that the Court of Appeals had rejected an argument for a cautionary accomplice instruction in *People v Sawicki*, 4 Mich App 467; 145 NW2d 236 (1966), in part because defense counsel on cross-examination had fully explored the circumstances of the accomplice's testimony:

In a criminal case it is not only proper but it is the duty of counsel for defendant to place before the jury all circumstances surrounding the people's witness upon the stand, as well as any fact which would have any reasonable tendency to affect their credibility. It is the function of the jury to decide first if the witness is interested, and second if the witness' interest has affected the credibility of his testimony. The trial judge is not required to comment in his instruction concerning a witness' interest since it bears upon the question of credibility which is reserved to the jury. [*Id*. at 475 (citations omitted).]

In light of these authorities, Justice Coleman concluded in *McCoy* that neither statute nor case law required the court to give a cautionary accomplice instruction in the absence of a request. Moreover, the failure to so instruct did not deny the defendant in *McCoy*

a fair trial, because "the accomplice was thoroughly cross-examined and the jury fully aware of all facets of his involvement. The judge correctly instructed that the testimony of all witnesses should be considered as to motive, prejudice, bias or interest in the outcome." *McCoy*, *supra* at 250.

This Court discussed the holding in *McCoy* in *People v Reed*, 453 Mich 685; 556 NW2d 858 (1996). In *Reed*, a codefendant testified in a joint trial, and the defendant argued on appeal that a cautionary accomplice instruction should have been given sua sponte. This Court rejected that argument because such an instruction would have prejudiced the codefendant.

The Court in *Reed* also explained that *McCoy* does *not* require *automatic* reversal for failure to instruct sua sponte in a closely drawn case. Rather, *McCoy* says only that such a failure to instruct *may* require reversal. Before *Reed*, this Court had not established standards for determining when the failure to instruct sua sponte requires reversal. The *Reed* Court concluded that reversal was not required where the accomplice's potential credibility problems have been plainly presented to the jury by other means, such as through defense counsel's

10

cross-examination of the alleged accomplice. *Reed*, *supra* at 693.

The *Reed* Court did not require reversal because the codefendant/accomplice's credibility problems were plainly apparent to the jury. Defense counsel and the prosecutor had explored credibility problems during cross-examination. Moreover, the accomplice was not a prosecution witness, but was a codefendant, and thus was not the beneficiary of any favorable bargains from the prosecution.

In *People v Gonzalez*, 468 Mich 636; 664 NW2d 159 (2003), this Court questioned *McCoy*. We quoted MCL 768.29, which provides that "[t]he failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused," and MCR 2.516(C), which states that "[a] party may assign as error the . . . failure to give an instruction only if the party objects on the record . . . ." We then stated:

> In this case, defendant neither requested a cautionary accomplice instruction nor objected to the court's failure to give one. Therefore, defendant is precluded from arguing that the omitted instruction was error. MCR 2.516(C). Furthermore, because he failed to request the omitted instruction, defendant is not entitled to have the verdict set aside. MCL 768.29. Consequently, defendant's only remaining avenue for relief is for review under *People v Grant*, 445 Mich 535; 520 NW2d 123 (1994).

11

> Because defendant failed to object to the
> omitted instruction, defendant's claim of error
> was forfeited. A forfeited, nonconstitutional
> error may not be considered by an appellate court
> unless the error was plain and it affected
> defendant's substantial rights. *Grant*, *supra* at
> 552-553. [*Gonzalez*, *supra* at 642-643.]

We then concluded that no error occurred because there was no evidence that the alleged accomplice was involved in the crime, and because the cautionary accomplice instruction would have been inconsistent with the defense theory at trial. Because the defendant could not demonstrate an error, he could not establish a plain error that affected his substantial rights, and thus he was not entitled to relief for the forfeited claim under *Grant*.

## B. Analysis

The rule created in *McCoy* has no basis in Michigan law. The *McCoy* rule mandates reversal of convictions for failing to give a cautionary accomplice instruction upon request, and allows reversal for failing to give such an instruction sua sponte where the issue of guilt is "closely drawn." But as Justice Coleman's dissent in *McCoy* demonstrates, this Court's decisions have historically accorded discretion to trial courts in deciding whether to provide a cautionary accomplice instruction. The mandatory rule invented in *McCoy* subverts this historical discretion.

12

Moreover, the discretion that this Court had, before *McCoy*, accorded to trial courts in this area is consistent with our statutory law. MCL 768.29 states: "The court shall instruct the jury as to the law applicable to the case and in his charge *make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require.*" (Emphasis added.) The phrase "as in his opinion the interest of justice may require" vests discretion in the trial court to decide to what extent it is appropriate to comment on matters such as the credibility of witnesses. The *McCoy* Court failed to consider this provision of MCL 768.29.

Despite these authorities, the *McCoy* Court chose to invent an unfounded rule. Indeed, in *People v Atkins*, 397 Mich 163, 171; 243 NW2d 292 (1976), this Court acknowledged the lack of a historical basis for the *McCoy* rule: "[T]he *McCoy* rule under discussion was given prospective application for the reason that it went beyond long-established Michigan precedent to the effect that special instructions regarding credibility was [sic] a matter within the sound discretion of the trial court."

Further, the first portion of the *McCoy* rule, i.e., that reversal is automatically required when the court

13

fails to give an instruction upon request, conflicts with MCL 769.26. That provision states:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

As we explained in *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999), in light of MCL 769.26, a defendant on appeal must demonstrate that a preserved nonconstitutional error was not harmless by persuading the reviewing court that it is more probable than not that the error affected the outcome of the proceedings. "An error is deemed to have been 'outcome determinative' if it undermined the reliability of the verdict." *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000). See also *People v Rodriguez*, 463 Mich 466, 474; 620 NW2d 13 (2000). The *McCoy* mandate of automatic reversal for failing to give a cautionary accomplice instruction upon request plainly contradicts MCL 769.26. Accordingly, we reject the automatic-reversal portion of the rule.

Next, the portion of the *McCoy* rule permitting reversal in the absence of a defense request if the issue

14

of guilt is "closely drawn" contradicts MCL 768.29, which states that "[t]he failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused," and MCR 2.516(C), which says that "[a] party may assign as error the . . . failure to give an instruction only if the party objects on the record . . . ." As we explained in *Gonzalez*, an appellate court's review of unpreserved claims is governed by MCL 768.29 and MCR 2.516(C).

This Court in *Reed* correctly observed that *McCoy* does not by its own terms *require* automatic reversal for failure to instruct sua sponte where the issue of credibility is closely drawn. The *McCoy* Court said that reversal *may* be required in the absence of a request, *not* that reversal is automatic. The central flaw in this aspect of the *McCoy* rule, however, is that it authorizes reversal without regard to the plain-error analysis required by *Grant* and *Carines,* by focusing solely on whether the issue of guilt is closely drawn. As this Court explained in *Reed*, potential credibility problems in a closely drawn case may become plainly apparent to a jury in the absence of a cautionary instruction.

Fundamentally, it is the province *of the jury* to assess the credibility of witnesses. In making that assessment, the jury should decide whether witnesses harbor any bias or prejudice. *Dumas*, *supra*; *Wallin, supra; Sawicki, supra*. And it is the role of defense counsel, through cross-examination of prosecution witnesses and closing argument, to expose potential credibility problems for the jury to consider. *Id.* The *McCoy* "closely drawn" rule fails adequately to take account of these central components of our system of trial by jury.

For these reasons, we hold that, as with all unpreserved claims of error, an unpreserved claim that the court failed to give a cautionary accomplice instruction may be reviewed *only* for plain error that affects substantial rights. An appellate court must follow the *Grant*/*Carines* plain-error analysis, and only when the defendant satisfies that test is reversal ever appropriate. We discern no basis for treating this one category of unpreserved claim any differently from other categories of alleged error that a defendant has failed to preserve.

Moreover, in considering whether a plain error exists, a reviewing court should be mindful of the discretion historically accorded to trial courts in deciding whether

16

to give a cautionary accomplice instruction. *Dumas, supra;* *Wallin, supra.*

Finally, applying the plain-error test to this case, we conclude that defendant has not met his appellate burden. A cautionary accomplice instruction was not clearly or obviously required in this case. As the Court of Appeals noted, it is not clear that Martin and Lawrence were accomplices in any event. Moreover, the prosecution presented evidence of guilt beyond the testimony of the alleged accomplices, including testimony from other witnesses and physical evidence that defendant was at the murder scene. Further, defense counsel thoroughly cross-examined Martin and Lawrence and challenged their testimony during closing argument, thereby exposing their potential credibility problems to the jury. The court also instructed the jury to consider any bias, prejudice, or personal interest that a witness might have. For these reasons, defendant has not demonstrated a plain error that affected his substantial rights.

## V. CONCLUSION

We conclude that the *McCoy* rule has no basis in Michigan law and is inconsistent with MCL 769.26, MCL 768.29, and MCR 2.516(C). A trial court has discretion in deciding whether to give a cautionary accomplice

instruction. Also, an unpreserved claim that the court failed to give a cautionary accomplice instruction may be reviewed only for plain error, under the framework set forth in *Grant* and *Carines*. Accordingly, we overrule *McCoy* and affirm the judgment of the Court of Appeals.

Maura D. Corrigan
Clifford W. Taylor
Elizabeth A. Weaver
Robert P. Young, Jr.
Stephen J. Markman

18

**S T A T E O F M I C H I G A N**

**SUPREME COURT**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                        No. 124811

WAYNE L. YOUNG,

    Defendant-Appellant.

_____

KELLY, J. (*concurring*).

    I would affirm the Court of Appeals decision, but I strongly disagree with the majority's reasoning. The decision in *People v McCoy*[1] should not be applied to this case. It represents a valid rule of law that we should retain, and the majority should not use this case as a vehicle to abandon it.

McCOY IS INAPPOSITE

    In *McCoy*, we stated:

> [I]t will be deemed reversible error . . . to fail upon request to give a cautionary instruction concerning accomplice testimony and, if the issue is closely drawn, it may be reversible error to fail to give such a cautionary instruction even in the absence of a request to charge. [*McCoy*, *supra* at 240.]

_____

[1] 392 Mich 231; 220 NW2d 456 (1974).

Defendant did not request a cautionary instruction in this case. To warrant giving the instruction, as *McCoy* tells us, the issue must be "closely drawn." *Id.* An issue is said to be closely drawn if a credibility contest between the defendant and an alleged accomplice must be resolved in order to rule on it. *People v Gonzalez*, 468 Mich 636, 643 n 5; 664 NW2d 159 (2003); *McCoy*, *supra* at 238-239.

This case does not involve a closely drawn issue. It is not one in which contrary versions of the facts were offered, leaving the jury to choose between them. Instead, the defense proceeded under the theory that the prosecution would be unable to prove every element of the charged offenses.

In argument before the jury, defense counsel attacked the story offered by the prosecution. He tried to show that the prosecution failed to meet the requirements for conviction. In some cases, to create a credibility contest between a defendant and an alleged accomplice, the defendant would have to take the stand. Other circumstances could arise as well that would create a credibility contest. However, because defendant in this case did not take the stand and his credibility was not

otherwise put at issue, he was not entitled to the cautionary instruction permitted by *McCoy*.[2] *Id*. at 240.

I also agree with the Court of Appeals that there was insufficient evidence to conclude that Michael Martin and Eugene Lawrence were defendant's accomplices. Whereas Martin accompanied defendant on some of his travels on the day of the murders, he never agreed to participate in the crime. In fact, he refused to participate. Martin may not have done enough to stop defendant, but his failure does not make him defendant's accomplice legally.

Lawrence provided defendant with a gun. But the evidence suggests that Lawrence was unaware that defendant planned to use it to commit a felony. Defendant asked Lawrence for the gun to protect himself from a person who had threatened him. Although insufficient evidence exists that Lawrence was defendant's accomplice, defense counsel implied during closing argument that Lawrence and Martin were defendant's accomplices.

The facts of the *McCoy* case were entirely different. There, the police arrested an individual whom they believed had been an accomplice in a robbery. The accomplice admitted that he and McCoy had committed the crime. *Id*. at

---

[2] At oral argument in this case, defense counsel admitted that *McCoy* was a "narrow case" and did not fit the facts of this case.

3

241 (Coleman, J., dissenting.). Here, there was no such admission. All the evidence suggested that Martin and Lawrence were not involved in the crime. Because they were not accomplices, the trial court did not err in failing to give the special instruction on accomplice testimony. *Id*. at 238-240.

Hence, the *McCoy* decision has no application to this case, and the majority offers no justification for reaching and overruling it here. It is as inappropriate to address *McCoy* in this case as it was in *People v Gonzalez, supra*, in which Justice Young wrote:

> [W]e conclude that there was no evidence of an accomplice in this case, and, therefore, *McCoy*'s "closely drawn" rule is not implicated. For that reason, we do not reach the question whether *McCoy* conflicts with MCL 768.29. [*Gonzalez, supra* at 643 n 6.]

We should not do here what we chose not to do in *Gonzalez*.

*MCCOY* REPRESENTS A VALID RULE OF LAW[3]

---

[3] Given that *McCoy* is inapposite, there is no need to apply it to the facts of this case. However, because the majority has decided to overturn *McCoy*, I provide a full discussion of the rules of law laid out in that case. Therefore, I will discuss both the requested cautionary instructions and sua sponte instructions. I feel that both were wisely recognized in *McCoy* and that both fit well within the established framework of appellate review in this state.

The majority accuses the *McCoy* decision of lacking any basis in Michigan jurisprudence and of inventing a novel rule of law.  Those claims should be examined more closely.

This Court stated long ago:

> We think the credibility of an accomplice, like that of any other witness, is exclusively a question for the jury; and it is well settled that a jury may convict on such testimony alone without confirmation.  There is no good sense in always applying the same considerations in every case to every witness who may stand in the relation of *particeps criminis*.  We think it is the duty of a judge to comment upon the nature of such testimony, as the circumstances of the case may require; to point out the various grounds of suspicion which may attach to it; to call their attention to the various temptations under which such witness may be placed, and the motives by which he may be actuated; and any other circumstances which go to discredit or confirm the witness, all of which must vary with the nature and circumstances of each particular case. [*People v Jenness*, 5 Mich 305, 330 (1858).]

This was a rule of law that has been endorsed by this Court repeatedly over the past 134 years.[4]  Obviously, because *McCoy* represents a natural growth of that history, it is neither novel nor lacking in legal basis.

REQUESTED CAUTIONARY INSTRUCTIONS AND
ABUSE OF DISCRETION/HARMLESS ERROR REVIEW

Not only does *McCoy* have substantial historical support, it fits well within Michigan's long established

---

[4]  See *People v Schweitzer*, 23 Mich 301, 305 (1871), *People v Hare*, 57 Mich 505, 518; 24 NW 843 (1885), *People v Considine*, 105 Mich 149, 163; 63 NW 196 (1895), and *People v Koukol*, 262 Mich 529, 532-533; 247 NW 738 (1933).

5

framework of appellate review.  *McCoy*[5] holds that "it will be deemed reversible error . . . to fail upon request to give a cautionary instruction concerning accomplice testimony . . . ."

The majority concludes that this rule contradicts the review established for both abuse of discretion and harmless error issues.  It accuses *McCoy* of ignoring the discretion of the trial court to instruct the jury.

The opposite is true.  *McCoy* explicitly recognizes the trial court's discretion and hews to the abuse of discretion standard.  *McCoy*, *supra* at 237.  Moreover, it provides guidance to when the standard is met.

*McCoy* recognizes that it is an abuse of discretion for a trial court to refuse to instruct a jury about the inherent unreliability of accomplice testimony.  *Id*. at 236-237.  This is consistent with MCL 768.29.[6]  If the trial

---

[5] *Supra* at 240.

[6] MCL 768.29 provides:

It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require. The failure

court fails to give an accomplice instruction, it fails to work toward "the expeditious and effective ascertainment of the truth regarding the matters involved." MCL 768.29. And it fails to make the comments on the evidence, the testimony, and the character of witnesses that justice requires.

As *McCoy* noted, accomplice testimony is fraught with dangers. Whether because of fear, threats, or hostility caused by government overreaching or the witness's greed or hopes of leniency occasioned by government deals, accomplice testimony has severe credibility problems. Given this inherent weakness, a skeptical approach to such testimony "'is a mark of the fair administration of justice.'" *McCoy*, *supra* at 236, quoting 30 Am Jur 2d, Evidence, § 1148, p 323. Therefore, a court fails to meet the mark of fair administration of justice when it omits a requested accomplice instruction. Moreover, the omission constitutes an abuse of discretion.

For the same reason, the *McCoy* rule does not violate the tenets of review for harmless error. Given the inherent unreliability of accomplice testimony, any conviction based on such testimony, absent a proper

of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused.

7

instruction, will affirmatively appear to be a miscarriage of justice. The failure to give the instruction fails to meet the mark. We should avoid letting the standards of the Michigan criminal justice system fall below this mark.

The inclusion of the accomplice witness instruction ensures the fairness of the trial. Its exclusion, when it is merited, undermines the reliability of the verdict. Accordingly, the error cannot be harmless. *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002).

### SUA SPONTE INSTRUCTION AND REVIEW FOR PLAIN ERROR

*McCoy* states that it may be error requiring reversal to fail to give the accomplice instruction if the issue is closely drawn, even absent a request from counsel. *McCoy*, *supra* at 240. The majority attacks this portion of *McCoy,* claiming that it contradicts the established review for plain error. A failure to instruct when there was no request is subject to review for plain error, the majority reasons, because the issue was neither raised nor addressed in the trial court.

For there to be plain error, our Court has decided, there must first be an error. Next, the error must be clear and obvious. Finally, it must adversely affect the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To warrant reversal, the

8

error must either result in the conviction of an actually innocent defendant or it must affect the fairness, integrity, or public reputation of the judicial proceedings. *Id*. Again, the *McCoy* rule fits within the confines of these principles.

The first two elements of the plain error test are satisfied if a judge mistakenly fails to give the cautionary accomplice instruction. The error exists, and it is clear and obvious. The next question is whether the error adversely affected the defendant's substantial rights. To determine if an error affects substantial rights, the appellate court makes the same inquiry as when reviewing for harmless error, except that the defendant bears the burden of persuasion. *United States v Olano*, 507 US 725, 734; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

The failure to give the cautionary accomplice instruction if it is appropriate undermines the reliability of any jury verdict. Hence, the error cannot be considered harmless. *Krueger*, *supra* at 54. This is especially true when the case boils down to a closely drawn credibility contest. Without basic protections, a criminal trial cannot reliably serve as a vehicle for properly determining guilt. *Arizona v Fulminante*, 499 US 279, 310; 111 S Ct 1246; 113 L Ed 2d 302 (1991). Because this failure to

9

instruct meets the harmless error standard, it also meets the plain error standard. *Olano*, *supra* at 734.

Moreover, such closely drawn cases will likely always meet the requirements for reversal. The omission of the instruction would mean that the trial court failed to meet the mark of the fair administration of justice. *McCoy*, *supra* at 236. This failure would raise serious questions regarding fairness, integrity, or the public reputation of the proceedings. *Carines*, *supra* at 763.

Contrary to the majority's conclusion, *McCoy* does not contradict MCL 769.26[7] or MCR 2.516(C).[8] MCL 769.26 and MCR

---

[7] MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

[8] MCR 2.516(C) provides:

> Objections. A party may assign as error the giving of or the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict (or, in the case of instructions given after deliberations have begun, before the jury resumes deliberations), stating specifically the matter to which the party objects and the grounds for the objection. Opportunity must be given to make the objection out of the hearing of the jury.

10

2.516(C) merely require that a defendant preserve issues for review. Those issues not preserved are subject to review for plain error.

*McCoy* works within the framework of plain error review. In overruling it, the majority abandons an important protection.

CONCLUSION

*McCoy* does not apply to this case because no credibility contest existed and there was insufficient evidence to justify characterizing Martin and Lawrence as accomplices. Therefore, this case provides an inappropriate vehicle for the majority to attack *McCoy*. Moreover, *McCoy* represents a valid rule of law that fits well within the established rules of appellate review. It should not be struck down.

Marilyn Kelly
Michael F. Cavanagh

11